## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **11-CR-049-01 (RWR)** |
| **CATHERINE G. WEBB** | : | |

## <u>MEMORANDUM IN AID OF SENTENCING</u>

On April 5, 2011, Ms. Catherine Webb, the defendant, entered a plea of guilty to a one count information charging her with making a false statement in violation of 18 U.S.C. § 1001. She will appear before this Honorable Court for sentencing on July 7, 2011.  Through undersigned counsel, Ms. Webb respectfully submits the following information for the Court's consideration in determining an appropriate sentence.  For the following reasons, and such other reasons as may be presented at the sentencing hearing, Ms. Webb respectfully requests that the Court sentence her to a term of probation, substituting a term of house arrest with electronic monitoring for any term of incarceration and requiring her to perform community service.

### <u>Factual Background</u>

Ms. Webb is a forty-eight-year-old single mother who took short-cuts in her job that constituted criminal false statements.  She is extremely remorseful and has been punished in significant ways.  She has lost her job.  She has been humbled before family, friends and former co-workers.  She now has a felony conviction and is struggling to find employment.  In addition, she has paid $73, 293.63 in restitution, depleting her savings and putting herself in debt to her family and friends.

Ms. Webb's father was a United States Navy Aviation Ordinance Expert for twenty-four years.  As a result, her family moved frequently, eventually settling in Illinois.  She attended Mahomet Seymour High School, in Mahomet, Illinois.  During high school, Ms. Webb began working for the Farmers Home Administration in Champaign, Illinois, as a secretary and continued working there after graduating from high school in 1981.  She worked there for several years and then worked for the Department of the Interior in Urbana, Illinois, as an administrative assistant for approximately three years.  During this time period, she attended Parkland Community College, but did not complete enough courses to obtain a degree.  In 1987, she obtained a job with the Defense Investigative Service, which later became the Defense Security Service, and later became part of the Office of Personnel Management ("OPM").  Throughout this employment she was a Special Agent responsible for conducting background investigations of individuals seeking security clearances.

In 1987, when she began doing background investigations, her office was at Chanute Airforce Base in Rantoul, Illinois.  In 1990, she married David Webb and transferred to the office in Pensacola, Florida, where her husband was stationed in the United States Navy.  While living in Florida, Ms. Webb learned that her husband was under investigation by the Navy Investigative Service for making obscene telephone calls.  In 1993, he was dishonorably discharged for this conduct.  See Exhibit A (submitted under separate cover).  Nonetheless, Ms. Webb agreed to stay with her husband because he agreed to counseling.

Later that year, Ms. Webb moved back to Illinois with her husband, and in 1994, she gave birth to their daughter.  However, her husband's obsessions did not stop.  Not long after her daughter was born, Ms. Webb learned that her husband again was being investigated for making

obscene telephone calls, this time by the Champaign County Police.  See Exhibit B (submitted

under separate cover).  A short time later, she learned that he also had been having an affair.

At this point, Ms. Webb began divorce proceedings, and the divorce became final in

1998.  She became the primary caretaker and essentially the sole provider for her daughter.  Her

ex-husband was ordered to pay child support, but he struggles financially and is not always able

to make these payments.  He was granted visitation rights every-other weekend, but Ms. Webb

has always tried to closely monitor his behavior as it relates to her daughter.  She has not learned

of him continuing to make obscene telephone calls, but she has learned that he spends a great

deal of time calling pornographic telephone services, spends time on pornographic computer

sights, and drinks excessively.

Over the years, Ms. Webb has worked hard to support and care for her daughter.  She not

only worked full-time, but as the reference letters submitted under separate cover attest, she also

has volunteered within her community in numerous capacities.

As the Court is aware, it was during Ms. Webb's work for OPM that the instant offense

occurred.  As noted above, she was responsible for conducting background investigations.  She

interviewed people familiar with the subject of the investigation, collected documentation and

reported this information to her superiors.  The reports were then provided to the agency

requesting the background investigation.  Ms. Webb did this work for more than 20 years.  She

became very familiar with the process, and she frequently collected information from the same

sources at various police departments and agencies.  In 2009, she began taking short cuts on

occasion,  such as indicating that she had spoken to a human source to obtain records, when she

had obtained the records via the internet, or indicating that she has spoken to more than one reference when she had not.[1]

During this time period, Ms. Webb's workload was high and her job was stressful, but Ms. Webb does not believe that this explains her actions. Her job was always stressful, and she had not previously taken such short-cuts. In fact, she makes no excuses for her behavior. She believes that she simply took short-cuts to get the job done and that there was no excuse for her behavior. Importantly, however, she never intended to cause harm or believed that the short-cuts she took undermined her reports. She never completely failed to complete an investigation, but instead did not do her job fully. She now recognizes, however, that doing so put each of her investigations into question.

Ms. Webb has readily accepted responsibility and entered into a plea agreement with the government. She agreed to enter a guilty plea to one count of making a false statement and agreed to repay the financial cost the government incurred because the background investigations she performed had to be redone. After reaching the agreement with the government and before appearing for the plea hearing, Ms. Webb took the initiative to obtain the restitution money from

---

[1]During the plea proceeding, Ms. Webb acknowledged doing so in more than a dozen instances. She recognizes that even one instance was too many and a criminal offense. However, the government's suggestion that she did so in 28.4% of the instances in which she had to confirm a record or reference is far from accurate. See Government's Memorandum in Aid of Sentencing at 8. The government's statics show only that 39 of 684 (or 5.7%) reports of record or reference checks were "confirmed false." The government includes within its percentage numerous instances in which the government found "falsification indicators" (without explanation as to what a "falsification indicator" is) or in which the government could not specifically validate the report. These instances do not amount to falsifications. Moreover, undersigned counsel previously reviewed the "confirmed false" instances with Ms. Webb and even these were not all falsifications. That said, Ms. Webb agrees that there were more than a dozen instances and any number of falsifications was significant and potentially damaging.

her savings account and by borrowing money from her family.  At the time of the plea hearing,

she provided the government with a check for the full amount of the agreed upon restitution,

$73,293.63.

## **Argument**

When imposing a sentence, the Court must consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentenced imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for [the applicable offense and the applicable category of defendant as set forth in the Sentencing Guidelines];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

See 18 U.S.C. § 3553(a); United States v. Booker, 543 U.S. 220, 259 (2005).

5

Congress has further provided that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.*

See 18 U.S.C. § 3582 (emphasis added).  With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]."  18 U.S.C. § 3553(a) (emphasis added).

**(1)     The United States Sentencing Guidelines.**

As set forth in the Presentence Investigation Report ("PSR"), the recommended sentencing range under the Guidelines is 12 to 18 months.  PSR at ¶ 52.  However, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties have agreed that any incarceration portion of the sentence to be imposed in this case will be a maximum sentence of 5 months of incarceration followed by 5 months of home detention as part of a 3-year term of supervised release and that Ms. Webb may seek a sentence below that maximum.  Section 6B1.2 of the Guidelines permits the Court to accept a Rule 11(c)(1)(C) agreement to a term below the recommended sentencing range if the departure is based on justifiable reasons.  Here, the departure is warranted based on Ms. Webb's lack of criminal history, background, remorse and family circumstances, as set forth more fully below.

Moreover, when sentencing a defendant, the Court "may not presume that the Guidelines range is reasonable." Gall v. United States, 128 S.Ct. 586, 596-597 (2007). Rather, the Court must treat the Guidelines "as one factor among several" that § 3553(a) requires the Court to consider.  Kimbrough v. United States, 128 S.Ct. 558, 564 (2007). Once the Court correctly calculates the sentence that the Guidelines recommend, the Court must then "make an individualized assessment," considering the remaining factors sets forth in § 3553(a).  Gall, 128 S.Ct. at 597.  Because the Guidelines merely reflect a "wholesale" view "rough[ly] approximat[ing] … sentences that might achieve § 3553(a)'s objectives," Booker and § 3553(a) require the Court to tailor an individualized sentence that actually does achieve § 3553(a)'s objectives in the case before it.  Consequently, this Court must "filter the Guidelines' general advice through § 3553(a)'s list of factors." Rita v. United States, 127 S.Ct. 2456, 2463, 2465, 2469 (2007); see also Gall, 128 S.Ct. at 598 ("[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue" (quoting Koon v. United States, 518 U.S. 81, 113 (1996))).  When the Guidelines' "rough approximation" conflicts with the Court's view of the sentence warranted by other § 3553(a) factors, the Court may disregard the sentencing range recommended by the Guidelines in favor of one that is tailored to the circumstances of the defendant.   Rita v. United States, 127 S.Ct. at 2463–2464 ("[t]he sentencing courts, applying the Guidelines in individual cases

7

may depart (either pursuant to the Guidelines or, since <u>Booker</u>, by imposing a non-Guidelines sentence)").

Here, the remaining § 3553 factors demonstrate that a sentence below the recommended range – a sentence that does not include a term of incarceration – would be appropriate.

**(2)      The Nature and Circumstances of the Offense.**

Although there is no indication that anyone who received a security clearance based on an investigation performed by Ms. Webb was later determined to be unsuitable, Ms. Webb now recognizes that her false statements were illegal and had the potential to result in an unsuitable individual obtaining a security clearance.  She also recognizes that, as a result of her conduct, the government had to have the background investigations assigned to her redone at the cost of $73,293.63.   However, Ms. Webb did not intend to cause any harm to the government.  Ms. Webb conducted background checks for more than 20 years.  She knew her job well and, at the time, she believed that the short-cuts she was taking were harmless.  She now recognizes that she had no right to decide to take such short-cuts, and that despite her experience, her judgment could not substitute for the OPM regulations that ensure that background checks are thorough and accurate.

**(3)      The History and Characteristics of the Defendant.**

Ms. Webb has never before been convicted of a criminal offense.  She committed the offense not for financial gain or to harm anyone.  She recognizes now that her failure to diligently and truthfully complete her job could have caused significant harm.

Ms. Webb is extremely remorseful for her actions.  She has demonstrated her remorse not only by entering a guilty plea, but by paying back the cost to the government of redoing her work.  Prior to the date of her plea hearing, Ms. Webb conscientiously obtained money to pay her restitution by using money she had saved and by borrowing money from her family and friends.  At the plea hearing, she gave the government a certified check for the full amount of the restitution.

Ms. Webb's extraordinary family circumstances and her position as the sole provider for her sixteen-year-old daughter also support a variance from the applicable guideline range.  A sentence involving incarceration would have devastating effects on the life of Ms. Webb's daughter.  The incarceration of her mother during her high school years not only will result in the loss of her only parent, but also potentially will result in the loss of her home and her entire support system at her school.  As discussed above, Ms. Webb is divorced from her daughter's father.  If Ms. Webb is incarcerated, her sister has agreed to care for her daughter, but her sister lives in a different city in Illinois which may result in her daughter being unable to attend the high school she now attends.  Moreover, Ms. Webb's greatest concern is that her ex-husband will seek and obtain custody and the family may not be able to prevent him from doing so.

 Currently, Ms. Webb's ex-husband has visitation rights every-other weekend.  Their daughter, however, frequently chooses not to go to her father's house, and while he may be able to care for her during an occasional weekend, Ms. Webb has many reasons to question his fitness to care for their daughter full-time.  She does not suspect that he would do anything inappropriate to her daughter, but she does question his ability to

provide an appropriate environment.  First, he struggles financially, does not maintain stable employment and is barely able to support himself.  He is in debt to several creditors, and Ms. Webb frequently receives calls from creditors inquiring about her ex-husband.  He frequently is unable to pay child support and is thousands of dollars in arrears.  Ms. Webb worries that he will not be able to pay his rent and could lose his home.

In addition to her concerns about his ability to support their daughter financially, Ms. Webb worries that her ex-husband's life-style will make his home an inappropriate environment for her teenager daughter to live full-time.  As noted above, Ms. Webb does not suspect that her husband would do anything inappropriate to her daughter, but his habits nonetheless cause her to believe that his home is not an appropriate living environment.   As noted above, he has twice been investigated for making obscene telephone calls.  He spends a great deal of time calling pornographic telephone services, spends time on pornographic computer sights, and drinks excessively.

Ms. Webb knows that whenever an individual commits a crime they put their family at risk. She knows that she should have considered the potential effects on her daughter before making a false statement on any report.  Clearly, she did not consider the consequences of her actions to either her daughter or herself.  Unfortunately, at the time, she did not recognize the seriousness of her conduct.  She now does and also recognizes that the Court must impose a punishment.  She asks only that the Court fashion a punishment that will allow her to continue to care for her daughter.

**(4)     The Purposes of Sentencing.**

Given Ms. Webb's history and lack of intent to cause harm, a sentence that does not involve a period of incarceration would be sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct.  Ms. Webb's prosecution for this offense has had a tremendous impact on her, allowing her to recognize the damage that she has done. In addition, as a result of her conduct, she now has a felony conviction.  This conviction will have significant consequences on her future -- most significantly, it will limit her employment opportunities.

No period of incarceration is necessary to protect the public from further crimes of Ms. Webb – there will be no further crimes.  The effect that this case has had on her life (and the potential effect on the life of her daughter) – absent any period of incarceration – is sufficient to guarantee that she will never commit another offense. Moreover, as the United States Sentencing Commission has recognized, defendants without any prior contact with the criminal justice system are unlikely to recidivate.  See United States Sentencing Commission, Recidivism and the "First Offender," A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004) (offenders with no prior arrests or convictions have the lowest recidivism rate).

Nor is a sentence of incarceration necessary to deter others.  Ms. Webb has and will continue to be punished for her conduct.  To the extent that background investigators will be deterred by the convictions and sentences of others, Ms. Webb's felony conviction, restitution paid for the government's cost of redoing the investigations,  job

loss, damaged reputation, along with the negative effects on her family and her ability to

obtain employment, would sufficiently deter any similarly situated individuals.

Moreover, the recent convictions of numerous background investigators (regardless of

whether a jail sentence was imposed) and the recent publicity surround these convictions

will provide significant deterrence to other individuals doing this work.  See Top-secret

clearance checks falsified, The Washington Times, June 21, 2001, available at

www.washingtontimes.com/news/2011/jun/21/top-secret-clearance-checks-falsified;

Security-Clearance Checks for OPM Allegedly Falsified, The Washington Post, April 9,

2009.

Finally, no period of incarceration can be imposed "to provide the defendant with

needed educational or vocational training, medical care, or other correctional treatment in

the most effective manner."  See 18 U.S.C. § 3553(a).  See Tapia v. United States, __

U.S. __, 2011 WL 2369395 (June 16, 2011) ("the Sentencing Reform Act precludes

federal courts from imposing or lengthening a prison term in order to promote a criminal

defendant's rehabilitation").

**(5)     The Kinds of Sentences Available.**

Here, rather than imposing a period of incarceration, the Court can and should

impose a substantial period of probation or supervised release with significant conditions,

such as home confinement with electronic monitoring and community service.  A

sentence of supervised release (or probation) itself is a "'substantial restriction of

freedom.'"  Gall, 128 S.Ct. at 595 (citation omitted).  As the Supreme Court has

explained:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.  Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.  See United States v. Knights, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting Griffin v. Wisconsin, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))).  Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.  They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3.  Most probationers are also subject to individual "special conditions" imposed by the court.

Id. at 595-96 (footnote omitted).

Home detention and community service are alternatives to incarceration that are appropriate forms of punishment in light of Ms. Webb's lack of criminal record, background and family circumstances.

**(6)     The Need to Avoid Unwarranted Sentence Disparities.**

The sentence of probation that Ms. Webb requests is consistent with the sentence that the majority of other similarly situated defendants have received.[2]  See Security-

---

[2]The government's suggestion that in order to avoid a disparity, Ms. Webb should receive a sentence of five months incarceration is inaccurate because it is based on a very narrow look at the background investigators that have been charged with such conduct, focusing on just three cases in this district, while attempting to distinguish some of the remaining cases in this district and failing to include at least one case in this district and three cases prosecuted in other districts. See Government's Memorandum in Aid of Sentencing at 11-12.  As set forth herein, a broader look at these cases demonstrates that a sentence of probation is appropriate in order to avoid an unwarranted disparity.

Clearance Checks for OPM Allegedly Falsified, The Washington Post, April 9, 2009 (noting that "most" investigators charged with making false statements have received probation).  Undersigned counsel has located ten similar prosecutions that have occurred since 2007.[3]  With one exception, these individuals have received sentences that range from probation to five months incarceration.  The one exception is an outlier because the defendant was sentenced to 27 months after he denied responsibility and was found guilty by a jury.  See United States v. George Abraham, 08-CR-153 (CKK) (sentenced on seven counts of making false statements to 27 months incarceration and 36 months of supervised release; convictions later vacated due to defendant's death).  Of the remaining nine cases, only three investigators received terms of incarceration as severe as the government seeks here (five months), one received a sentence of three months, one received a sentence of two months, and *five* received sentences that did not include a term of incarceration.  See United States v. Suzanne Weeks, 09-CR-033 (PLF) (sentenced to 5 months incarceration and 5 months home detention and ordered to pay $101,180.48 in restitution);  United States v. Nathaniel Walker, 09-CR-274 (CKK) (same, with $61,405.32 in restitution);  United States v. Anthony Domico, 09-CR-280 (RWR) (same, with $69,611.12 in restitution);  United States v. Thomas Fitzgerald, 11-CR-017 (RBW) (sentenced to 3 months incarceration and 12 months home detention and ordered to pay $106.711.81 in restitution and perform 400 hours of community service);  United States v. Kerry M. Gerdes, 09-CR-20289 (E.D.Mich.) (Sentenced to 2 month incarceration and 6 months electronic monitoring and ordered to pay $24,555.00 in restitution);  United

---

[3]This information was gather from the government, media sources and several Assistant Federal Defenders in other jurisdictions.  Counsel has no means of determining the exact number of such investigators prosecuted.

States v. Faye Liner, 10-CR-026 (HHK) (sentenced to probation with 12 months home

detention and ordered to pay $68,461.20 in restitution);  United States v. Mario A.

Marsans, 07-CR-578 (D.Md.) (sentenced to three years probation with 10 months of

electronic monitoring and ordered to pay $101,032.00 in restitution and perform 100

hours of community service);  United States v. Ronald G. Payton, 08-CR-153 (CKK)

(sentenced to probation with 6 months of location monitoring and 20 hours of community

service and ordered to pay $10,000 in restitution);  United States v. George J. Dittman,

08-CR-226 (D. Conn.) (sentenced to three years probation and ordered to pay $21,239.00

in restitution and perform 200 of community service); United States v. Donald Lerch, 10-

CR-264 (EGS) (sentenced to two years probation).[4]

As noted by the government, three investigators who entered guilty pleas received

sentences equivalent to the sentence the government seeks here, but those individuals did

not take the extraordinary step of paying the restitution in full prior to sentencing, as

Ms. Webb has done, nor did they have the same family circumstances as Ms. Webb.  The

case that was before this Court, Domico, differed from Ms. Webb's case because the

defendant was a contract worker who was paid according to how many investigations he

completed and was motivated by greed – the more reports he completed (by saying he

completed work that he had not completed), the more money he received.  See Domico,

09-CR-280 (RWR), Dkt. #13, Government's reply Memorandum in Aid of Sentencing.

---

[4]In addition to the listed cases, there have been two prosecutions of individuals who were
record searchers and submitted false reports in relation to background investigations.
Presumably because of their lower level of responsibility with regard to the investigations –
although the potential damage from their false statements was similar to that of those listed
above – these individuals were permitted to enter guilty pleas to misdemeanor offenses and
received sentences of probation.  See United States v. Kayla Marie Smith, 09-M-252 (AK);
United States v. Paul Higgins, 08-M-698 (AK).

Ms. Webb was not motived by greed and did not gain financially.  Moreover, there have

been three cases in this district, <u>Liner</u>, <u>Payton</u>, and <u>Lerch</u>, and two cases in other districts,

<u>Dittman</u> and <u>Marsans</u> in which the defendants were sentenced to probation, with no term

of incarceration.  Ms. Webb's case most closely resembles that of <u>Liner</u>, who was a

Special Agent of OPM, like Ms. Webb, and received a sentence of probation with home

detention, in part because she, like Ms. Webb, needed to care for her teenage son.

**(7)      The Need to Provide Restitution to Any Victims of the Offense.**

As noted above, Ms. Webb has paid in full the restitution in this case.

### <u>Conclusion</u>

For all of the foregoing reasons and such other reasons as may be presented at the

sentencing hearing, the Court should impose a sentence that substitutes a term of home

confinement with electronic monitoring for any term of incarceration.  Such a sentence

would be reasonable and appropriate.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500 ext. 109